STATE OF NORTH CAROLINA v. ABRAHAM JACOB DEWBERRY

No. COA03-1552

(Filed 7 September 2004)

**1. Evidence— hearsay—declaration against interest—excluded**

The exclusion of hearsay in a prosecution for first-degree murder and assault was not an abuse of discretion where defendant, who was claiming self-defense, wanted to introduce testimony that a gun had been removed from the victim's car after the

shooting. Defendant contended that the statements should have been admitted as a declaration against interest under N.C.G.S. § 8C-1, Rule 804 (b)(3), but the court determined that the statement was not sufficiently against the declarant's interest and that there were insufficient independent, nonhearsay indications of trustworthiness.

**2. Evidence— client's statements to attorney—hearsay**

The trial court did not err by refusing to compel a witness's attorney to answer questions in a first-degree murder and assault prosecution where the statements that defendant was seeking had already been correctly excluded as hearsay.

**3. Appeal and Error— preservation of issues—excluded evidence—no offer of proof—other evidence admitted**

The exclusion of evidence of conduct by a murder victim was not properly preserved for appeal where defendant made no showing of what the answer would have been. Moreover, there would have been no prejudice because there was other evidence of the victim's penchant for violence.

Appeal by defendant from judgment and commitment entered 18 July 2003 by Judge James L. Baker, Jr. in Rutherford County Superior Court. Heard in the Court of Appeals 16 June 2004.

*Roy Cooper, Attorney General, by Thomas G. Meacham, Jr., Assistant Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellant.*

STEELMAN, Judge.

Defendant was convicted by a jury of first-degree murder and assault with a deadly weapon inflicting serious injury. Defendant was sentenced to life imprisonment without parole for the murder charge, and a consecutive active term of 34 to 50 months for the assault charge. Defendant appeals.

State's evidence tends to show that on the evening of 21 July 2002, defendant was driving Bill Berry (Berry) in a Ford Explorer when they came upon Gene Walton (Walton) and Charlie Byers (Byers) stopped in the road in a white Honda. Walton was in the driver's seat. Defendant and Berry left the Explorer and approached

the Honda. Defendant was carrying a handgun. Defendant fired his gun multiple times into the Honda, aiming at Walton. Byers fell out of the passenger side of the vehicle and defendant walked around the Honda in Byers' direction. Byers ran off, and defendant returned to Walton and shot him several more times, then returned to his Explorer and left. Walton died from his wounds, and Byers, who was shot once in the side, recovered. Defendant did not deny shooting the two men, but claimed he acted in self-defense when Walton reached for a gun. The police did not find any weapon at the crime scene.

The State offered the testimony of two witnesses who heard defendant repeatedly yelling "Talk that s**t now, mother f****r" as he was shooting into the Honda. Byers testified that Walton did not have a gun with him that evening, and other witnesses testified that they did not see Walton with a gun before the shooting. Byers also testified that he and Walton never spoke with John McDowell (McDowell) the day of the shooting.

Defendant presented testimony from McDowell, who stated that he saw Walton on a regular basis, and that he was usually armed with a pistol. McDowell further testified that about an hour before the shooting he spoke with Walton, and while looking into the Honda during the conversation, he saw a handgun inside the vehicle. McDowell did not mention seeing the gun to investigators on the night of the shooting, and first mentioned it about two weeks before defendant's trial.

Byers testified that Walton sometimes carried a gun, and that he had taken out a warrant on Walton for an incident where Walton shot over his head. Byers further testified that he was on probation at the time of the shooting, and that it would have been a violation of his probation to be in the Honda if Walton did, in fact, have a gun with him.

Teresa Phillips (Phillips) was the girlfriend of defendant and the mother of his two children. They were not living together at the time of the shooting. She had been having sexual relations with Walton. She testified that she sometimes saw Walton with a handgun. She further testified that Walton attempted to get her to stop seeing defendant, but that she refused because of the children. This angered Walton, and Phillips testified that Walton told her "he had something for" the defendant and showed her his gun. She told defendant about the incident, and warned him to be careful. Shandell

Davis testified that she had seen Walton with a gun, and knew that he owned a gun in the past.

Defendant testified at trial. He testified that when Phillips told him about her exchange with Walton, he felt he was in danger, in particular because he had heard that Walton had shot at someone just a few weeks prior to the shooting in the instant case. According to defendant, while on his way to visit a friend he came across Walton and Byers stopped in the road. He told Berry that he was going to ask Walton what was going on between him and Phillips. He brought his gun with him because he was worried Walton might try and shoot him. Defendant testified that he asked Walton, "Gene, man, what's going on with you and Teresa?" He claimed that Walton responded "f**k you, n****r" and reached for a gun. It was at this point, according to defendant, that he started shooting Walton. After Byers ran off, defendant claimed that Berry went inside the passenger side of the car and emerged with a gold chain and Walton's gun. Defendant's father testified that Berry approached him on 6 October 2002 and gave him a silver handgun, which defendant's father then turned over to defendant's attorneys. He was not allowed to testify that Berry told him it was the gun he took from the Honda on the night of the shooting.

Defendant tried to introduce evidence that Berry had told defendant's father, his own attorney, and defendant's attorneys that he had removed the gun from the Honda after the shooting that night. Defendant also sought to introduce evidence that Berry's attorney told both the prosecutor and defendant's attorneys that Berry had told him this as well. Berry was called at trial and asked if he had removed the gun from the Honda. He answered "I choose not to answer that." On *voir dire*, the trial court ruled over defendant's objection that the hearsay statements of Berry were not admissible under Rule 804(b)(3) of the North Carolina Rules of Evidence. The trial court instructed the jury on self-defense.

[1] In his second assignment of error defendant argues the trial court erred in not allowing into evidence hearsay statements attributed to Berry tending to support defendant's claim of self-defense. We disagree.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. Rule 801(c). Hearsay

evidence is not admissible unless allowed by statute or the Rules of Evidence. N.C.R. Evid. Rule 802. Rule 804 provides exceptions for the admissibility of hearsay in certain circumstances when the declarant is unavailable. Rule 804(a)(1) states that a declarant is "unavailable" under the rule if he is exempted by ruling from the court from testifying due to privilege. Rule 804 further states:

> (b) *Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> > (3) Statement Against Interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible in a criminal case unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Admission of evidence under the provision of Rule 804 (b)(3) concerning criminal liability requires satisfying a two prong test: 1) the statement must be against the declarant's penal interest, and 2) the trial judge must find that corroborating circumstances insure the trustworthiness of the statement. *State v. Kimble*, 140 N.C. App. 153, 157, 535 S.E.2d 882, 885 (2000). In order for a hearsay statement to pass the first prong of the test, it must actually subject the declarant to criminal liability, *State v. Singleton*, 85 N.C. App. 123, 129, 354 S.E.2d 259, 263 (1987), and it "also must be such that the declarant would understand its damaging potential" (i.e. that a reasonable man in declarant's position would not have said it unless he believed it to be true). *State v. Tucker*, 331 N.C. 12, 25, 414 S.E.2d 548, 555 (1992).

In order to satisfy the second prong, there needs to be "some other independent, nonhearsay indication of the trustworthiness" of the statement. *State v. Artis*, 325 N.C. 278, 305-06, 384 S.E.2d 470, 485 (1989), *vacated and remanded on other grounds by Artis v. North Carolina*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). "The determination of whether the trustworthiness of the statement is indicated by corroborating circumstances is a preliminary matter to be decided by the trial judge." *State v. Wardrett*, 145 N.C. App. 409, 415, 551 S.E.2d 214, 218 (2001) (citation omitted).

Broad discretion must be given the trial judge in

> determining the reliability of the declaration and the declarant by
> consideration of such factors as spontaneity, relationship
> between the accused and the declarant, existence of corrobora-
> tive evidence, whether or not the declaration had been subse-
> quently repudiated and whether or not the declaration was in fact
> against the *penal interests* of the declarant.

*State v. Wardrett*, 145 N.C. App. 409, 415, 551 S.E.2d 214, 219 (2001),
citing *State v. Haywood*, 295 N.C. 709, 729, 249 S.E.2d 429, 441-42
(1978). "The facts and circumstances surrounding the commission of
the crime and the making of the declaration must corroborate the
declaration and indicate the probability of trustworthiness."
*Haywood*, 295 N.C. at 730, 249 S.E.2d at 442. The existence of a
motive for declarant to have offered a false statement will be evi-
dence arguing against its admission. *Id.* at 729, 249 S.E.2d at 441.

In the instant case, the trial court granted the State's motion to
exclude the evidence, stating "I cannot find any circumstantial guar-
antees of trustworthiness. It is certainly not to be disputed that the
statement is against his interest. But I do not believe that it is so far
contrary to his pecuniary or proprietary interest that a reasonable
man in his position would not have made the statement unless he
believed it to be true. I think there are a multiple of reasons [why]
such a statement could have been given."

Defendant contends that the trial court applied the incorrect
standard and that the correct standard is whether the statement was
against the declarant's *penal* interest, not his *pecuniary or propri-
etary* interest. We agree that the trial judge mis-spoke in phrasing the
ruling in terms of the civil aspect of the test rather than the criminal
aspect. However, the essential ruling of the court was that the state-
ment was against the declarant's interest, but that it was not a state-
ment that "a reasonable man in his position would not have made . . .
unless he believed it to be true." The trial court further held that it did
not find circumstantial guarantees of trustworthiness to exist under
the second prong of the test. The trial court thus made express rul-
ings that the testimony met neither prong of the test for admissibility
under Rule 803(b)(3).

The facts surrounding the crime and the declaration tend to show
that Berry was present at the crime with defendant, that he was near
the Honda when defendant shot the victims, and that he left the scene
with defendant in the Explorer after the shooting. Berry made a state-

ment to police on 15 August 2002, less than a month after the shooting. In this statement, Berry never mentioned that Walton had a gun, or that he saw or removed a gun from the Honda. After giving his statement, Berry was arrested for being an accessory after the fact to the crimes defendant was charged with.

It is true that Berry potentially faced new charges of larceny of a firearm by telling others he had removed a gun from Walton's vehicle that night. However, it is also true that he was already facing charges (accessory after the fact), and that if defendant was acquitted at trial, the State would not have been able to proceed against Berry on the accessory charge. *State v. Robey*, 91 N.C. App. 198, 371 S.E.2d 711, *cert. denied*, 323 N.C. 479, 373 S.E.2d 874 (1988). Accessory after the fact to first-degree murder is a Class C felony. N.C. Gen. Stat. § 14-7 (2003). Larceny of a firearm is a Class H felony. N.C. Gen. Stat. § 14-72 (2003). The maximum sentence for a Class C felony is 261 months. N.C. Gen. Stat. § 15A-1340.17. The maximum sentence for a Class H felony is 30 months. *Id.* There was a clear motive for Berry to fabricate the story, even in light of the potential new charges. Thus, we cannot say that the trial judge abused his discretion in finding the statement was not so far against his penal interests that "a reasonable man in his position would not have made the statement unless he believed it to be true." Defendant has failed to demonstrate that he met the requirements of the first prong of the test.

As to the second prong of the test, the trial judge is in the best position to determine the credibility and weight to be given the proffered evidence. In light of all of the evidence, we cannot say the trial judge abused his broad discretion in determining defendant failed to meet his burden of showing that there existed independent, nonhearsay indications of trustworthiness. Defendant thus has failed to meet the requirements of the second prong of the test for admissibility under N.C. Gen. Stat. § 804(b)(3). This assignment of error is without merit.

[2] In defendant's first assignment of error he argues the trial court erred in refusing on the grounds of attorney client privilege to compel Berry's attorney to answer certain questions. These questions pertained to Berry's statements to his attorney about the gun Berry supposedly retrieved from Walton's vehicle after the shooting. We disagree.

The trial court had refused to allow testimony of hearsay statements made by Berry concerning his supposed retrieval of the gun

from Walton's vehicle after the shooting. Having found no error in the exclusion of the hearsay testimony, we find no error in refusing to allow Berry's attorney to testify to it. This assignment of error is without merit.

[3] In defendant's third assignment of error he argues the trial court erred in sustaining the State's objection to defendant's attempts to offer into evidence specific instances of conduct by the victim. We disagree.

Shandell Davis (Davis), a witness called by the State, was cross-examined by defendant about her knowledge of Walton's reputation for violence. The trial court sustained the State's objection to defendant's question: "The altercations that you had heard about, did any of them involve a gun?" Defendant argues that the evidence was improperly excluded because it added weight to defendant's contention that he acted in self-defense, and that his fear of Walton was reasonable.

> While evidence of character is generally inadmissible, N.C.R. Evid. 404(a)(2) provides that evidence of pertinent character traits of a victim offered by an accused is admissible. N.C.R. Evid. 405(b) allows for proof of character by evidence of specific instances of conduct in cases where character is an essential element of a charge, claim or defense. Where defendant argues he acted in self-defense, evidence of the victim's character may be admissible for two reasons: "to show defendant's fear or apprehension was reasonable or to show the victim was the aggressor."

*State v. Ray*, 125 N.C. App. 721, 725, 482 S.E.2d 755, 758 (1997) (citations omitted). "Defendant may admit evidence of the victim's character to prove defendant's fear or apprehension was reasonable and, as a result, his belief in the need to kill to prevent death or imminent bodily harm was also reasonable." *State v. Watson*, 338 N.C. 168, 187, 449 S.E.2d 694, 706 (1994), *cert denied, Watson v. North Carolina*, 514 U.S. 1071, 131 L. Ed.2d 569 (1995), *overruled in part on other grounds, State v. Richardson*, 341 N.C. 585, 461 S.E.2d 724 (1995). The specific incident of conduct a defendant seeks to enter into evidence becomes relevant "only if defendant knew about it at the time of the shooting." *State v. Shoemaker*, 80 N.C. App. 95, 101, 341 S.E.2d 603, 607 (1986).

"In order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required

unless the significance of the evidence is obvious from the record." *State v. Ray*, 125 N.C. App. 721, 726, 482 S.E.2d 755, 758 (1997). When the defendant objects to the exclusion of testimony, but does not assert or make an offer of proof for the record of what the witness' testimony would be, this Court "cannot assess the significance of the evidence sought to be elicited[.]" *Id.*, 482 S.E.2d at 758-59.

In the instant case, defendant has made no showing of what the witness' answer to the question would have been, and thus we cannot determine whether the evidence could have been properly admitted under Rule 405(b).

Furthermore, assuming *arguendo* that sustaining the State's objection was error, defendant has not met his burden of proving he was prejudiced by the error. *See State v. Watson*, 338 N.C. 168, 188, 449 S.E.2d 694, 706 (1994), *Overruled on other grounds by State v. Richardson*, 341 N.C. 585, 461 S.E.2d 724 (1995). There was plenary evidence from multiple witnesses who testified to Walton's reputation for violence in the community, and who testified that Walton often carried a gun. There was testimony from John McDowell, who said he saw Walton with a handgun in his vehicle shortly before the shooting. Charlie Byers testified that Walton shot at him (over his head) a few weeks prior to the shooting in question. The defendant's father testified that Berry flagged him down in his automobile some time after the shooting and gave him a handgun, which he turned over to defendant's attorneys. Phillips testified that Walton made threatening remarks to her about the defendant hours before the shooting and while he was holding a handgun. She further identified the handgun given to defendant's father by Berry as the same one she saw Walton brandish. Defendant testified that Phillips had informed him of Walton's threat, and that he feared for his safety. He further testified that when he approached Walton's vehicle that night, Walton reached for a handgun and that is why he shot Walton. Defendant also testified that Berry took a gold chain and a handgun from Walton after the shooting, and he identified the gun obtained from Berry as the same gun he saw that night.

The exclusion of Davis' testimony, even if it would have been that Walton was involved in an altercation that involved a gun, does not rise to the level of prejudice on these facts because the plenary evidence that was already before the jury, showing Walton's penchant for violence and use of a handgun. This assignment of error is without merit.

NO ERROR.

Judges TYSON and BRYANT concur.