STATE OF NORTH CAROLINA v. KHURAM ASHFAQ CHOUDHRY

No. COA09-773

(Filed 17 August 2010)

**1. Appeal and Error— preservation of issues—not raised at trial**

Defendant's constitutional issue regarding cross-examination of an officer about a missing witness was not considered where it was raised for the first time on appeal.

**2. Evidence— hearsay—statement against penal interest—no corroborating evidence**

The trial court did not abuse its discretion by holding that an absent witness's hearsay statement to police was not admissible as a statement against penal interest where there was no evidence corroborating the witness's account and the witness had a motive to give a false statement.

**3. Evidence— hearsay—catchall exception—no circumstantial guarantees of trustworthiness**

The statement of a missing witness to a police officer was not admissible under the catchall hearsay provision where it lacked circumstantial guarantees of trustworthiness.

**4. Evidence— open door—not applicable**

The State did not open the door to the statement of a missing witness to a police officer where the State did not offer any portion of the statement into evidence and consistently argued for its exclusion.

**5. Evidence— statement of accomplice—excluded—no prejudicial error**

There was no prejudice shown from the exclusion of a statement by a missing accomplice where defendant argued that his primary defense was that the missing accomplice acted alone in assaulting the victim, but the case was submitted to the jury under the acting in concert theory.

**6. Criminal Law— conflict of interest—hearing and waiver by defendant**

There was no conflict of interest in a first-degree murder prosecution where the trial court did not conduct an evidentiary hearing concerning the defense attorney's prior representation of defendant's girlfriend in unrelated matters. The trial court conducted a hearing in which defendant was fully advised of the facts and waived any possible conflict of interest.

Judge BEASLEY dissents.

Appeal by defendant from judgment entered 19 September 2008 by Judge Henry W. Hight, Jr. in Durham County Superior Court. Heard in the Court of Appeals 13 January 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General Melissa L. Trippe, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

STEELMAN, Judge.

The statement of a co-defendant who absconded prior to trial was not admissible under a hearsay exception where there was no corroborating evidence to support its admission. Where the State did not offer any portion of the co-defendant's statement into evidence, it did not "open the door" to the admission of the statement. Defendant waived any possible conflict of interest on the part of his trial attorney.

## I. Factual and Procedural Background

On the evening of 3 November 2002, Khuram Choudhry (defendant), Umar Malik (Malik), and Hasan Sokoni (Sokoni) drove to a BP gas station where Rana Shazad Ahmed (Shazad) was employed as a manager to confront him about calling defendant's residence and cursing defendant's mother and sister[1]. The gas station was closing so they drove to Shazad's apartment complex and waited in the parking lot. When Shazad arrived, defendant and Malik jumped out of the vehicle and ran after him. An altercation ensued. Sokoni, who was sitting in the backseat of the vehicle, heard sounds "like balls being hit" but could not see the confrontation. Shazad was hit in the head several times with a baseball bat. Defendant and Malik returned to the

---

1. Anne Choudhry, defendant's sister, was romantically involved with Malik at the time of this incident. The couple were subsequently married.

vehicle and they drove away. Defendant subsequently called Michelle Wahome (Wahome), his girlfriend, and stated that "Shazad's gone. Shazad's dead." Defendant stated that they went to Shazad's residence to "F—— him up." Defendant had a "bat or a stick" and hit Shazad. Malik then got the "bat or stick" and repeatedly hit Shazad in the head so hard he fell to the ground. Defendant stated that he was not worried about being apprehended by the police, but that he had left his Newport cigarette pack at the scene.

At approximately 7:30 a.m. the next morning, Shazad's·roommate found him unconscious, unresponsive, and bleeding on a concrete landing to the apartment complex. 911 was called. When paramedics arrived, they observed that Shazad's eyes were swollen shut and bruised, which indicated that it had been "quite a while since he had been . . . assaulted." The paramedics also found a congealed mass of blood on the back of Shazad's head. Shazad was transported to Duke Hospital where he subsequently died. The cause of death was blunt force trauma to the head.

At the crime scene, police recovered a coin, a pack of Newport cigarettes, and a hair sample. There were no fingerprints found on the cigarettes and the hair sample found was that of the victim. The blood collected from the scene did not belong to Malik or defendant.

Malik and defendant were subsequently arrested on 27 September 2006, approximately four years after the crime. After waiving his *Miranda* rights, Malik gave a statement to the police implicating himself in Shazad's murder. Malik stated that defendant was in the vehicle when the beating occurred. After police interviewed Malik, officers informed defendant that Malik had told them what had transpired. Defendant responded, "That's a lie." Defendant denied any knowledge of the incident.

On 15 September 2008, defendant was tried for first-degree murder. Malik, his co-defendant, absconded to Pakistan and failed to appear for trial. During the State's case, Officer Cates testified that he had taken the statement by Malik, but did not testify as to the contents of that statement. The State marked his investigative report[2] as exhibit No. 57 for identification purposes, but did not offer it into the evidence. After the State's direct examination, defense counsel requested that he be able to cross-examine Officer Cates regarding the contents of Malik's statement and made an offer of proof as to

2. The contents of Malik's statement were contained in this report.

Officer Cates's testimony outside of the presence of the jury. The State objected on the basis of hearsay. The trial court sustained the State's objection. The jury found defendant guilty of first-degree murder. The trial court sentenced defendant to life imprisonment without parole. Defendant appeals.

## II. Malik's Statement to Police

In his first argument, defendant contends that the trial court erred by sustaining the State's objection to defense counsel's cross-examination of Officer Cates concerning the contents of Malik's statement to police as hearsay. We disagree.

## A. Alleged Constitutional Violation

[1] Defendant first argues that by sustaining the State's objection to the cross-examination of Officer Cates regarding Malik's statement, his federal and state constitutional due process right to present a defense were violated. However, defense counsel failed to present any constitutional argument to the trial court. It is well-settled that constitutional error will not be considered for the first time on appeal. *State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005) (citation omitted). Further, our Supreme Court has held that where the Rules of Evidence apply and can resolve the issue presented, the appellate court does not consider constitutional arguments. *State v. Tucker*, 331 N.C. 12, 29, 414 S.E.2d 548, 557 (1992); *see also State v. Agee*, 326 N.C. 542, 546, 391 S.E.2d 171, 173 (1990); *State v. Creason*, 313 N.C. 122, 127, 326 S.E.2d 24, 27 (1985). Defendant's constitutional argument is dismissed.

## B. Statement Against Penal Interest

[2] Defendant next argues that Malik's statement was admissible under the hearsay exception pursuant to N.C. Gen. Stat. § 8C-1, Rule 804(b)(3) as a statement against penal interest.

N.C. Gen. Stat. § 8C-1, Rule 804(b) provides:

*(b) Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) Statement Against Interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against

another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible in a criminal case unless corroborating circumstances clearly indicate the trustworthiness of the statement.

N.C. Gen. Stat. § 8C-1, Rule 804(b)(3) (2009).

In *State v. Dewberry*, this Court set forth the requirements for the admission of a hearsay statement under N.C. Gen. Stat. § 8C-1, Rule 804(b)(3):

Admission of evidence under the provision of Rule 804 (b)(3) concerning criminal liability requires satisfying a two prong test: 1) the statement must be against the declarant's penal interest, and 2) the trial judge must find that corroborating circumstances insure the trustworthiness of the statement. *State v. Kimble*, 140 N.C. App. 153, 157, 535 S.E.2d 882, 885 (2000). In order for a hearsay statement to pass the first prong of the test, it must actually subject the declarant to criminal liability, *State v. Singleton*, 85 N.C. App. 123, 129, 354 S.E.2d 259, 263 (1987), and it "also must be such that the declarant would understand its damaging potential" (i.e. that a reasonable man in declarant's position would not have said it unless he believed it to be true). *State v. Tucker*, 331 N.C. 12, 25, 414 S.E.2d 548, 555 (1992).

In order to satisfy the second prong, there needs to be "some other independent, nonhearsay indication of the trustworthiness" of the statement. *State v. Artis*, 325 N.C. 278, 305-06, 384 S.E.2d 470, 485 (1989), *vacated and remanded on other grounds by Artis v. North Carolina*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). "The determination of whether the trustworthiness of the statement is indicated by corroborating circumstances is a preliminary matter to be decided by the trial judge." *State v. Wardrett*, 145 N.C. App. 409, 415, 551 S.E.2d 214, 218 (2001) (citation omitted).

166 N.C. App. 177, 181, 600 S.E.2d 866, 869 (2004). The State concedes that Malik's custodial statement meets the first prong of this analysis. Therefore, we focus our analysis on the second prong.

" 'The circumstantial guaranty of reliability for declarations against interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true.' " *Tucker*, 331 N.C. at 27, 414 S.E.2d at 556 (quoting N.C. Gen. Stat. § 8C-1, Rule 804(b)(3), comment). It is well-

settled that the trial court has broad discretion in determining the reliability of the declaration. *State v. Haywood,* 295 N.C. 709, 729, 249 S.E.2d 429, 442 (1978). Factors to be considered include "spontaneity, relationship between the accused and the declarant, existence of corroborative evidence, whether or not the declaration had been subsequently repudiated and whether or not the declaration was in fact against the *penal interests* of the declarant." *Id.*

In the instant case, defendant argued he should be able to cross-examine Officer Cates regarding Malik's statement to the police. The content of the statement was as follows:

the decedent had been calling his spouse and being vulgar to her and saying what he wanted to do sexually and that Malik stated that he, Choudhry and Hasan, went to the decedent's residence only to speak to him; however, during the meeting, the decedent pulled out a firearm. Malik stated that he knocked the firearm out of the decedent's hands. Then Choudhry allegedly picked up the firearm and fled to the vehicle. And Malik explained that the decedent next retrieved a ball bat and swung it at him, that the bat got caught in his hoodie and he was successful in taking it away. Malik explained that after he gained control over the bat that he swung and struck the decedent several times; however, because of the darkness he wasn't aware of where on the body he was striking the victim, but only that he was making contact.

In the instant case, there was no evidence presented at trial to corroborate Malik's account of events. The only witness present at the scene of the murder who testified was Sokoni. Sokoni testified that on 3 November 2002, defendant, Malik, and he drove to the BP gas station. While in the vehicle, defendant and Malik were "talking about Shazad talking bad about [defendant's] mother and sister" and were "pretty upset." After leaving the BP station, they drove to Shazad's apartment complex so they could "chastise him when he [got] off of work." Shazad subsequently pulled into the parking lot. Defendant and Malik immediately "jumped out of [the] car and ran after Shazad[.]" Sokoni heard sounds like "balls being hit" two or three times, but could not see the confrontation. Defendant and Malik were gone for only a "minute or two" and then ran back to the vehicle. Sokoni allegedly did not ask what had happened. Sokoni did not mention defendant having a firearm and stated that defendant and Malik ran back to the vehicle at the same time.

The murder weapon was never recovered because defendant disposed of the bat on Interstate Highway 85 during a trip to Virginia. At trial, Wahome testified that when defendant called her that evening after the beating, he stated that "he had a bat or a stick or something and he hit Shazad and he said [Malik] got the stick or the bat and just kept hitting him."

Without some "other independent, nonhearsay indication of the trustworthiness" of the statement sought to be admitted, our appellate courts have upheld the trial court's ruling excluding such evidence. *See State v. Reeb*, 331 N.C. 159, 172, 415 S.E.2d 362, 369 (1992); *State v. Brown*, 335 N.C. 477, 484-85, 439 S.E.2d 589, 594 (1994); *State v. Pickens*, 346 N.C. 628, 642, 488 S.E.2d 162, 170 (1997). Further, Malik had a motive to give a false statement. *See Dewberry*, 166 N.C. App. at 182, 600 S.E.2d at 870 ("The existence of a motive for declarant to have offered a false statement will be evidence arguing against its admission."). Malik and defendant were friends at the time of the incident. Malik was also romantically involved with defendant's sister and had married her by the time he gave his statement to police. An examination of Malik's statement shows that not only was Malik exculpating defendant, but was also attempting to establish a possible defense, *i.e.* that he acted in self-defense.

Based upon the fact that there was no evidence presented to corroborate Malik's account of events and that Malik had a motive to give a false statement, the trial court did not abuse its discretion in holding that Malik's hearsay statement to police was not admissible under N.C. Gen. Stat. § 8C-1, Rule 804(b)(3). *See Wardrett*, 145 N.C. App. at 415, 551 S.E.2d at 218 ("As with other exceptions to the hearsay exclusionary rule, the trial judge (on *voir dire*) must apply a threshold test to determine in his sound discretion whether the declaration bears the indicia of trustworthiness." (quotation and alteration omitted)).

This argument is without merit.

## C. Catchall Provision

[3] Defendant alternatively argues that Malik's statement was admissible under the catchall provision of N.C. Gen. Stat. § 8C-1, Rule 804(b)(5). We disagree.

At the outset, we note that admission of hearsay under Rule 804(b)(5) is more stringent than under the enumerated exceptions.

*State v. Levan,* 326 N.C. 155, 163, 388 S.E.2d 429, 433 (1990). N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) provides:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) (2009). The guidelines for admission of hearsay testimony under Rule 804(b)(5) are well-settled. Once the trial court determines that the declarant is unavailable, a six-part inquiry must be conducted to determine admissibility:

(1) Whether the proponent of the hearsay provided proper notice to the adverse party of his intent to offer it and of its particulars;

(2) That the statement is not covered by any of the exceptions listed in Rule 804(b)(1)-(4);

(3) That the statement possesses "equivalent circumstantial guarantees of trustworthiness";

(4) That the proffered statement is offered as evidence of a material fact;

(5) Whether the hearsay is "more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable means"; and

(6) Whether "the general purposes of [the] rules [of evidence] and the interests of justice will best be served by admission of the statement into evidence."

*State v. Ali,* 329 N.C. 394, 408, 407 S.E.2d 183, 191-92 (1991) (quotation omitted). At trial, the State argued Malik's statement "has . . . not

one iota of trustworthiness about it." Hearsay statements "may be admissible under the residual exception if it possesses 'circumstantial guarantees of trustworthiness' equivalent to those required for admission under the enumerated exceptions." *State v. Smith*, 315 N.C. 76, 94, 337 S.E.2d 833, 844-45 (1985). As we have held above, Malik's statement does not possess circumstantial guarantees of trustworthiness.

This argument is without merit.[3]

### D. Opening the Door

**[4]** Defendant lastly argues that the trial court erred in sustaining the State's objection to defendant using Malik's statement to cross-examine Officer Cates on the basis that the State "opened the door" by eliciting testimony from Officer Cates regarding defendant's response to Officer Cates informing him that he had received a statement from Malik. We disagree.

It is well-settled law in North Carolina that "[w]here one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially." *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981). Under this doctrine, commonly referred to as "opening the door," the courts of this State have consistently held that if the State introduces into evidence part of a statement made by a defendant, the defendant is entitled to have the rest of the statement introduced, even if self-serving, so long as the statements are part of the same verbal transaction. *State v. Vick*, 341 N.C. 569, 578-79, 461 S.E.2d 655, 660 (1995); *State v. Weeks*, 322 N.C. 152, 167, 367 S.E.2d 895, 904 (1988).

*State v. Safrit*, 145 N.C. App. 541, 549, 551 S.E.2d 516, 522 (2001). In the instant case, the State did not offer any portion of Malik's statement into

---

3. We note the trial court did not make specific findings of fact and conclusions of law with regard to its ruling excluding Malik's statement. However, defendant raised no objection at trial and does not argue in his brief that a new trial is warranted on this ground. We are therefore precluded from reviewing this issue. N.C.R. App. P. 10(b)(1). Further, our Supreme Court has held that even when the trial court has failed to make findings and conclusions as to whether a statement contained "equivalent circumstantial guarantees of trustworthiness" necessary for admission under the exceptions to the hearsay rule, the appellate court should review the record and make our own determination. *State v. Valentine*, 357 N.C. 512, 518, 591 S.E.2d 846, 853 (2003).

the evidence, and consistently argued for its exclusion as discussed *supra*. The "opening the door" doctrine is not applicable to this case.

## E. Prejudice

[5] Even assuming *arguendo* that the trial court erred by sustaining the State's objection to the use of Malik's statement, defendant has not shown prejudice. *See State v. Jordan*, 130 N.C. App. 236, 241, 502 S.E.2d 679, 682 (1998) ("[I]n order for the defendant to be entitled to a new trial, he must show that the error in excluding the statement prejudiced him to the extent that had the error not been committed, a different result would have been reached at trial."), *cert. denied*, 350 N.C. 103, 531 S.E.2d 828 (1999). Defendant argues that he was unduly prejudiced because his primary defense was that "Malik acted alone in hitting the victim with the baseball bat." However, this case was submitted to the jury under an acting in concert theory.

"Under the principle of acting in concert, a person may be found guilty of an offense if he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Wilson*, 322 N.C. 117, 141, 367 S.E.2d 589, 603 (1988) (citation omitted). Overwhelming evidence tended to show defendant and Malik sought out Shazad to "F— him up" on 3 November 2002 and that defendant was present while the beating occurred, resulting in Shazad's death. Defendant has failed to show that a different result would have been reached had Malik's hearsay statement been admitted into evidence.

## III. Conflict of Interest

[6] In his second argument, defendant contends that the trial court erred by failing to conduct an evidentiary hearing concerning his attorney's possible conflict of interest due to his prior representation of Wahome in unrelated matters. We disagree.

A criminal defendant subject to imprisonment has a Sixth Amendment right to counsel. *Argersinger v. Hamlin*, 407 U.S. 25, 37, 32 L. Ed. 2d 530, 538 (1972). The Sixth Amendment right to counsel applies to the states through the Fourteenth Amendment of the United States Constitution. *State v. James,* 111 N.C. App. 785, 789, 433 S.E.2d 755, 757 (1993). Sections 19 and 23 of the North Carolina Constitution also provide criminal defendants in North Carolina with a right to counsel. *Id.* The right to counsel includes

a right to "representation that is free from conflicts of interests." *Wood v. Georgia*, 450 U.S. 261, 271, 67 L. Ed. 2d 220, 230 (1981).

*State v. Mims*, 180 N.C. App. 403, 409, 637 S.E.2d 244, 247-48 (2006). When a possible conflict of interest is brought to the attention of the trial court, our appellate courts have required the following:

> [W]hen the court becomes aware of a potential conflict of interest with regard to a defendant's retained counsel, especially when the person with the potentially compelling interest is known to be a prosecution witness . . . the district judge shall conduct a hearing to determine whether there exists a conflict of interest[.] . . . In addition, the trial judge should see that the defendant is fully advised of the facts underlying the potential conflict and is given the opportunity to express his or her views.

*James*, 111 N.C. App. at 791, 433 S.E.2d at 758-59 (quoting *United States v. Alberti*, 470 F.2d 878, 881-82 (2d Cir. 1972), *cert. denied*, 411 U.S. 919, 36 L. Ed. 2d 311 (1973)). The failure to conduct such an inquiry has been held to be reversible error. *Id.* at 791, 433 S.E.2d at 759. However, we note that "the Sixth Amendment right to conflict-free representation can be waived by a defendant, if done knowingly, intelligently and voluntarily." *Id.*

In the instant case, the prosecutor informed the trial court that in June 2003, defense counsel had represented Wahome with regard to criminal charges that were reduced to common law forgery. Defendant appeared along with Wahome in a videotape taken in the store where the criminal conduct occurred, but was not charged. Defense counsel asserted that there was no conflict and that he did not intend to question Wahome about that particular incident. The trial court then conducted the following colloquy with defendant:

> The Court: Mr. Choudhry, I'm going to ask you some questions. You don't need to keep your hand raised. If you don't understand any question I ask you, tell me and we'll go over it again until you do. Are you able to hear and understand me?
>
> Witness: Yes.
>
> . . . .
>
> The Court: It has been indicated to this Court that a person may be called in as a witness in this case who was at some time in the past represented by your attorney, Mr. Williams. That witness being, is this Renee Wright?

Mr. Williams: No. It's Michelle Wahome.

The Court: Michelle Wahome. Michelle Wahome.

. . . .

The Court: You understand that?

Witness: Yes.

. . . .

The Court: . . . Did you understand that Ms. Wahome might testify in this case and that Mr. Williams had represented her in the past?

Witness: Yes, sir.

The Court: Did you have any concerns about whether or not Mr. Williams can appropriately represent you in this case because he represented a witness for the State in the past?

Witness: No.

The Court: Are you satisfied with his representation of you to this point?

Witness: Yes.

The Court: And even in light of the fact that he represented a future witness in this case, do you desire for him to continue as your attorney in this matter?

Witness: Yes.

The Court: And do you want to talk to him or me to make any further inquiry of him about his participation in that prior case or are you satisfied where you are?

Witness: Satisfied.

The Court: Okay. Thank you, sir. . . .

Upon being advised of a potential conflict of interest, the trial court took "control of the situation" and conducted a hearing, in which "defendant [was] fully advised of the facts underlying the potential conflict and [was] given the opportunity to express his or her views." *Id.* Defendant waived any possible conflict of interest. This argument is without merit.

Defendant does not argue his remaining assignments of error and they are deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).

NO ERROR.

Judge McGEE concurs.

Judge BEASLEY dissents in a separate opinion.

BEASLEY, Judge dissenting.

As to Defendant's argument that the trial court erred by failing to conduct an evidentiary hearing to address the possible conflict of interest due to his attorney's prior representation of the State's witness Michelle Wahome, in unrelated matters, I believe that the trial court did not properly conduct an inquiry, fully informing Defendant of the specific potential conflict of interest such that Defendant was able to knowingly, intelligently, and voluntarily make a decision regarding counsel. I, therefore, respectfully dissent.

"[W]here a trial court becomes aware of even the 'mere possibility' of a conflict of interest prior to the conclusion of a trial, the trial court must conduct a hearing to determine whether the conflict will deprive a defendant of his Sixth Amendment right to counsel." *State v. Mims*, 180 N.C. App. 403, 410, 637 S.E.2d 244, 248 (2006) (citing *State v. Hardison*, 126 N.C. App. 52, 55, 483 S.E.2d 459, 461 (1997)).

The trial court conducted an inquiry, informing Defendant that his attorney previously represented Michelle Wahome, a State's witness, on unrelated charges. Defendant appeared in a videotape with Wahome in the transaction for which she was later convicted of common law forgery. The trial court also informed Defendant that Wahome "might testify" and asked whether Defendant "had concerns" about Wahome's possible testimony to which Defendant indicated he did not, nor did Defendant have concerns that his attorney formerly represented Wahome, and Defendant indicated that he was satisfied with his attorney's services. Defendant declined the trial court's invitation to speak with his attorney or to the court about the attorney's prior representation of Wahome.

Our Court in *State v. James*, 111 N.C. App. 785, 433 S.E.2d 755 (1993), held that " 'the trial judge should see that the defendant is **fully advised of the facts underlying the potential conflict** and is given the opportunity to express his or her views.' " *Id.* at 791, 433 S.E.2d at 759 (quoting *United States v. Alberti*, 470 F.2d 878, 881-82 (2d Cir. 1972) (emphasis added)). In assessing the consequences about which a defendant should be informed, our Court further noted:

We believe representation of the defendant as well as a prosecution witness (albeit in another matter) creates several avenues of possible conflict for an attorney. Confidential communications from either or both of a revealing nature which might otherwise prove to be quite helpful in the preparation of a case might be suppressed. Extensive cross-examination, particularly of an impeaching nature, may be held in check. Duties of loyalty and care might be compromised if the attorney tries to perform a balancing act between two adverse interests.

*Id.* at 790, 433 S.E.2d at 758.

In the case *sub judice*, the trial court did not specifically inform Defendant of the consequences the attorney's potential conflict of interest might impose upon Defendant. The trial court did not inform Defendant that if Wahome testified, as she did, that if Defendant's attorney examined her, the attorney might be prohibited from zealously questioning her about the 2003 events for which she was convicted or about any information garnered from his representation of Wahome, which might have been detrimental to Wahome or detrimental or beneficial to Defendant. It is unclear however, whether the attorney did not question Wahome about the forgery conviction because of confidential matters preventing him from seeking to impeach her character for truthfulness or because he did not wish to implicate Defendant for his involvement with Wahome in the 2003 incident by opening the door for the State's witness to provide greater detail about Defendant's involvement.

It is not enough for the trial court to ask Defendant if he "ha[d] any concerns about whether or not Mr. Williams [Defendant's attorney] [could] appropriately represent [Defendant] in this case because he represented a witness for the State in the past" without informing Defendant about the possible consequences a potential conflict of interest might bear on Defendant's attorney's ability to zealously represent him. In determining whether a conflict existed, it would not be enough for the trial court to rely on Defendant's attorney to explain the consequences, especially if a conflict actually exists. *See State v. Ballard,* 180 N.C. App. 637, 643, 638 S.E.2d 474, 479 (2006) (rejecting the State's argument that defense counsel had adequately advised the defendant on the implications of the conflict of interest because "it is the *trial court,* not the conflicted defense counsel . . . which must 'see that the defendant is fully advised' " on these matters (quoting *James,* 111 N.C. App. at 791, 433 S.E.2d at 758).

Because I believe that the trial court did not properly conduct a hearing to inform Defendant of the consequences of any potential conflict of interest and because Defendant was not fully informed, he did not knowingly, intelligently, and voluntarily waive any such conflict. Accordingly, Defendant argues that he is therefore entitled to a new trial, but this case is unlike *James* because here, as discussed above, the record does not "clearly show[] on its face that the conflict adversely affected counsel's performance[.]" *James*, 111 N.C. App. at 791, 443 S.E.2d at 759 (presuming prejudice because it was clear from the record that an actual conflict of interest existed). I would remand for the trial court to conduct an evidentiary hearing. *See Mims*, 180 N.C. App. at 411, 637 S.E.2d at 249 (citing *Hardison*, 126 N.C. App. at 58, 483 S.E.2d at 462) (remanding the matter to the trial court for an evidentiary hearing to address whether the defendant's attorney had a conflict where such could not be determined from the face of the record).