STATE OF NORTH CAROLINA v. CLAYTON JAMES

No. 9118SC1116

(Filed 7 September 1993)

**Constitutional Law § 295 (NCI4th)— second-degree murder—
representation of defendant and witness—conflict of interest**

An attorney's dual representation of defendant and a key
prosecution witness in a second-degree murder prosecution
established a conflict of interest wherein the attorney could
not effectively represent defendant even though the represen-
tation of the witness took place during concurrent criminal
charges not related to this case. The overlap of representation
prior to and at the time of trial resulted in an unavoidable
conflict as to confidential communications and affected counsel's
ability to effectively impeach the credibility of the witness;
furthermore, the witness's plea bargain was never explored
on cross-examination, in contrast to the suggested plea bargain
of another witness. The trial judge should inquire into an
attorney's multiple representation once made aware of the
fact. No such inquiry was made in this case, a remand for
a new trial rather than a hearing was necessary because the
record clearly shows on its face that the conflict adversely
affected counsel's performance, and, while the Sixth Amend-
ment right to conflict-free representation can be waived by
a defendant, the record does not indicate that defendant in-
tended to waive this right.

**Am Jur 2d, Criminal Law § 754 et seq.**

**Circumstances giving rise to prejudicial conflict of interests
between criminal defendant and defense counsel—state cases.
18 ALR4th 360.**

Appeal by defendant from judgment entered 16 November
1990 by Judge Joseph R. John in Guilford County Superior Court.
Heard in the Court of Appeals 2 February 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney
General Rebecca B. Barbee, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant
Appellate Defender Constance H. Everhart, for defendant-
appellant.*

JOHNSON, Judge.

Defendant was convicted of second degree murder resulting from the death of Shawn Ford on 27 May 1989. The facts pertinent to this appeal are as follows: a high school graduation party attended by several hundred people was in progress at a club called "B. J.'s" on East Market Street in Greensboro in the early morning hours of 27 May 1989. Defendant arrived at B. J.'s with Michael Hammonds and Kenneth Tisdale sometime after midnight.

Defendant testified as follows: Jimmy Allred was standing near a van and kept staring at him. Allred said something to defendant; Allred was standing by Haywood Parker and Bernard Best. Robert "Lee Lee" Jamison walked up and told defendant to do what he was going to do and get it over with. Defendant and Jamison then backed off and someone threw a beer can at Jamison. Defendant could not see who threw the beer can because he was watching Allred. Defendant went around the van, looked down, saw a gun and grabbed it for protection. As he picked it up, it fired. He ran to Jamison, who was fighting with Ford. Defendant struck Ford on the head with the gun. When an officer grabbed defendant, he threw the gun out of his hand. Defendant repeatedly denied aiming the gun at anyone, and insisted that the gun went off when he picked it up.

After locking defendant in the patrol car, the police officer checked on the victim, who was bleeding from a head wound. The victim died approximately one hour later at a hospital emergency room. An autopsy showed that the cause of death was a gunshot wound to the left chest. Lacerations on the side of his head were caused by blunt force and did not contribute to his death.

Michael Hammonds and Kenneth Tisdale testified that they had arrived at B. J.'s with defendant, and that defendant had tight jeans on and did not have anything that appeared to be a gun in his pockets.

Timothy Cole testified to the following: that he was at B. J.'s that night, in the company of his friends Allred, Parker and Best; that he tried to break up the argument between Allred and defendant; and that while holding back Allred, Ford came up to the group and hit Jamison in the back with a beer can; and that defendant, who had his hand in his pocket, "came out of his pocket and shot him," although Cole had previously told the police in

STATE v. JAMES

[111 N.C. App. 785 (1993)]

a statement that he did not actually see the defendant remove the gun from his pocket. Cole also testified that he had been sentenced to twenty years the previous week in federal court upon a guilty plea to a drug conspiracy charge.

Haywood Parker testified that he saw defendant approach the group and was "right there in Jimmy's face" with his hand in his pocket. He told Allred he should not fight. As he was pushing Allred back, Jamison walked over to the defendant and told him to stop arguing or do what he had to do. He saw Ford walk up and throw a beer can, striking Jamison in the back of the head, and then heard a gun shot and saw a gun in defendant's hand. He testified he did not actually see defendant fire the gun. One week earlier, Parker had been sentenced to twenty-three years in prison for his participation in the same drug conspiracy for which Timothy Cole was charged.

Tracy Fewell, who dated Timothy Cole, was at B. J.'s the night of the shooting. She testified as follows: She saw defendant and Jimmy Allred arguing. After hearing a shot, she saw Timothy Cole walk away from the crowd, holding a gun by his side. He walked by her and slid the gun under the seat of a car nearby, which was then driven away by someone else. Tonya Towns and Danielle Towns also testified that they saw Timothy Cole throw something into the car which drove away.

Defendant called Bill Osteen, the attorney who represented Timothy Cole on the federal drug conspiracy charges for which he had been sentenced the previous week, to the witness stand. Osteen testified that as part of his plea agreement in the federal case, Cole agreed to provide cooperation and assistance in the prosecution of "related persons," including testimony, and that in exchange, the government would file a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure for a reduction of Cole's sentence. The United States Attorney asked for a proffer of information about any criminal activity of which the defendants in the federal case were aware. Because of Cole's proffer of information concerning his statement to the Greensboro police regarding the death of Ford, Cole received a sentence reduction of 84 months for his "substantial assistance."

Osteen also testified that his letter to the U.S. Attorney had forecast that Cole might testify and that he advised Cole, having chosen this route of "substantial assistance," that it was his duty

to follow through "in the hope that something would be done later on." If Cole went back to the court for a further sentence reduction, Osteen intended to make the federal court aware of Cole's testimony in the state case. However, Osteen believed this testimony alone would not be enough to cause the government to file a Rule 35 motion and he did not intend to give Cole a contrary impression.

On rebuttal, David Smith, United States Attorney for the Middle District of North Carolina, testified that Cole had no verbal or written agreement with the U.S. Attorney's office to testify in this case. Smith did not intend to file a substantial assistance pleading as a result of Cole's testimony.

Attorney John B. "Jack" Hatfield was appointed to represent defendant on 25 July 1989, upon defendant's affidavit of indigency. Haywood Parker retained Hatfield on 8 February 1990 to represent him on a state felony charge of possession of a firearm by a felon. Hatfield also began advising Parker as to his alleged participation in a conspiracy to possess and traffic in crack cocaine, for which he was federally indicted on 28 February 1990.

Hatfield first appeared in federal court for Parker on 10 April 1990, representing him through the imposition of his sentence on 7 November 1990. Parker's sentence for the federal offense reflected a departure from the sentencing guidelines "upon motion of the government, as a result of defendant's substantial assistance, and nature of offense" (the state charge of possession of a firearm by a felon was not resolved until 24 April 1991).

On 3 July 1990, Hatfield received a list of the State's witnesses as to the case at hand and was placed on formal notice that Parker might be called to testify against defendant. During cross-examination of Parker at defendant's trial, Hatfield acknowledged this dual representation, and it was thus brought to the attention of the trial court.

Defendant argues that he was deprived of his federal and state constitutional rights to the full and effective assistance of counsel and due process of law by trial counsel's conflicting interests in simultaneously representing defendant and State's witness, Haywood Parker. For reasons which follow, we agree with defendant, reverse the trial court's decision, and remand the case for a new trial.

The right to counsel guaranteed by the Sixth Amendment of the United States Constitution is a fundamental right. *Argersinger v. Hamlin*, 407 U.S. 25, 32 L.Ed.2d 530 (1972). And, "unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself." *Cuyler v. Sullivan*, 446 U.S. 335, 343, 64 L.Ed.2d 333, 343 (1980). This constitutional right is applicable to the states through the Fourteenth Amendment of the United States Constitution, and § 19 and § 23 of the North Carolina Constitution. *State v. Shores*, 102 N.C. App. 473, 402 S.E.2d 162 (1991).

As a starting point, we note that we are dealing with a question of conflict of interest, not ineffective assistance of counsel. *Cuyler* set forth the standard that establishes a violation of the Sixth Amendment while performing multiple representation: a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affected the performance of his lawyer. *Id.* at 346-47, 64 L.Ed.2d at 345-46; *State v. Yelton*, 87 N.C. App. 554, 561, 361 S.E.2d 753, 758 (1987). In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674 (1984), Justice O'Connor said:

> In *Cuyler* . . . the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts . . . [p]rejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'

*Strickland*, 466 U.S. at 692, 80 L.Ed.2d at 696. *Cuyler*, 446 U.S. at 350, 348, 64 L.Ed.2d at 347, 346. *See also State v. Loye*, 56 N.C. App. 501, 289 S.E.2d 860, *appeal dismissed by* 306 N.C. 748, 295 S.E.2d 483 (1982).

The three criminal defendants charged with first degree murder in *Strickland* were represented by the same two privately retained attorneys. In the case *sub judice*, we deal with a defendant and a prosecution witness who are represented by the same attorney

in different matters. Although we have found no North Carolina law on these facts, a number of jurisdictions have dealt with conflicts of interest in a similar context and have required reversal of a criminal conviction.

*Gordon v. State*, 684 S.W.2d 888 (1985), a Missouri case, held that there is an inherent conflict of interest when defense counsel is representing the defendant and a prosecution witness, whether in a related or unrelated case. In *Commonwealth v. Hodge*, 386 Mass. 165, 434 N.E.2d 1246 (1986), the Court determined that there was a genuine conflict of interest where defense counsel's law partner represented a witness for the State in an unrelated libel suit before, during and after counsel's representation of the witness. *E.g., State v. Duncan*, 435 N.W.2d 384 (1988); *State v. Carmouche*, 508 So.2d 792 (1987); *State v. Serpas*, 485 So.2d 999 (1986); *Bellows v. State*, 12 Fla. L. Weekly 1578, 508 So.2d 1330 (1987); *In Interest of Saladin*, 359 Pa.Super. 326, 518 A.2d 1258 (1986); *Lace v. United States*, 736 F.2d 48 (2nd Cir. 1984); *Pinkerton v. State*, 395 So.2d 1080 (1980). *See generally* 27 ALR3d 1431.

We believe representation of the defendant as well as a prosecution witness (albeit in another matter) creates several avenues of possible conflict for an attorney. Confidential communications from either or both of a revealing nature which might otherwise prove to be quite helpful in the preparation of a case might be suppressed. Extensive cross-examination, particularly of an impeaching nature, may be held in check. Duties of loyalty and care might be compromised if the attorney tries to perform a balancing act between two adverse interests.

We have reviewed the record and find that attorney Hatfield, by representing defendant in this matter and representing witness Parker in a different matter, did actively represent conflicting interests and this adversely affected defendant herein. The nature of a claim of this sort is such that it will not appear on the face of the record. *State v. Wise,* 64 N.C. App. 108, 306 S.E.2d 569 (1983). However, various factors influence our ruling. We find the overlap of representation prior to and at the time of trial of both parties by attorney Hatfield resulted in an unavoidable conflict as to confidential communications, and affected counsel's ability to effectively impeach the credibility of witness Parker, thus compromising defendant's representation. A further example is that Parker's suggested plea bargain arrangement was never explored

by defendant's counsel on cross-examination; this is in contrast to the suggested plea bargain arrangement of witness Timothy Cole which was vigorously attacked by counsel. Having demonstrated that counsel actively represented conflicting interests and that this actual conflict of interest adversely affected his lawyer's performance, prejudice is presumed and defendant is entitled to a new trial.

We further find that in a situation of this sort, the practice should be that the trial judge inquire into an attorney's multiple representation once made aware of this fact. If the possibility of conflict is raised before the conclusion of trial, the trial court must "take control of the situation." *United States v. Cataldo*, 625 F. Supp. 1255, 1257 (S.D.N.Y. 1985) (citations omitted). A hearing should be conducted "to determine whether there exists such a conflict of interest that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment." *Cataldo*, 625 F. Supp. at 1257. *United States v. Alberti*, 470 F.2d 878 (2d Cir. 1972), *cert. denied, Alberti v. U.S.*, 411 U.S. 919, 36 L.Ed.2d 311 (1973) *and cert. denied, Depompeis v. U.S.*, 411 U.S. 965, 36 L.Ed.2d 685 (1973) advised:

> [W]hen the court becomes aware of a potential conflict of interest with regard to a defendant's retained counsel, especially when the person with the potentially compelling interest is known to be a prosecution witness . . . the district judge shall conduct a hearing to determine whether there exists a conflict of interest[.] . . . In addition, the trial judge should see that the defendant is fully advised of the facts underlying the potential conflict and is given the opportunity to express his or her views.

*Alberti*, 470 F.2d at 881-82. No such inquiry was made in the instant case, and the failure of the trial judge to conduct an inquiry, in and of itself, constitutes reversible error. Ordinarily, we would remand the case to the trial court for a hearing to determine if the actual conflict adversely affected the lawyer's performance. However, where the record, as in this case, clearly shows on its face that the conflict adversely affected counsel's performance, we will not remand for an evidentiary hearing, but order a new trial.

Finally, it should be noted that the Sixth Amendment right to conflict-free representation can be waived by a defendant, if

done knowingly, intelligently and voluntarily. *U.S. v. Swartz*, 975 F.2d 1042 (4th Cir. 1992). *United States v. Akinseye*, 802 F.2d 740, 744-45 (4th Cir. 1986), *cert. denied, Ayodeji v. United States*, 482 U.S. 916, 96 L.Ed.2d 678 (1987). However, the record does not indicate nor do we believe defendant intended to waive this right.

We hold that attorney Hatfield's dual representation of defendant and Parker, a key prosecution witness, established a conflict of interest wherein Hatfield could not effectively represent defendant. We hold as such although Hatfield's representation of Parker took place during concurrent criminal charges not related to this case. Further, we do not speculate as to the extent defendant may have been prejudiced, as prejudice in this case is presumed.

New trial.

Judges Greene and Martin concur.