STATE OF NORTH CAROLINA v. JOSHUA BALLARD, Defendant

No. COA05-1398

(Filed 19 December 2006)

**1. Constitutional Law— right to counsel—conflict of interest—representation of potential witness**

The trial court erred in a double first-degree murder, double robbery with a deadly weapon, and conspiracy to commit robbery with a deadly weapon case by denying defense counsel's motion

STATE v. BALLARD

[180 N.C. App. 637 (2006)]

to withdraw based on his ongoing representation of a potential witness who had alleged exculpatory information although he could not be called based on the fact the witness's testimony could implicate him in unrelated criminal offenses, and defendant is entitled to a new trial, because: (1) the trial court never took control of the situation or fully advised defendant of the facts underlying the potential conflict as evidenced by defendant's continuing statements that he wanted both to keep his counsel and have the witness testify, a situation made impossible by the conflict; and (2) it cannot be concluded that defendant waived his right to conflict-free representation knowingly, intelligently, and voluntarily when the trial court failed to properly question and advise defendant on these matters.

## 2. Criminal Law— judge's admonishment of witness—not denial of fair trial

The trial judge in a prosecution for two murders and other crimes did not express an opinion about the credibility of a witness or coerce a witness to testify in violation of defendant's due process right to a fair trial before an impartial jury when he admonished a teenage witness who was reluctant to testify to go home, eat, drink, rest, take her medications and come back the next day to testify, and that if no answers came from the witness, the same would be tried each day until the witness was able to testify or the judge was convinced that the witness would never testify.

## 3. Jury— possibility of juror misconduct—juror knew families of defendant and one of victims—abuse of discretion standard

The trial court did not abuse its discretion in a double first-degree murder, double robbery with a deadly weapon, and conspiracy to commit robbery with a deadly weapon case by failing to investigate the possibility of juror misconduct and by denying defendant's motion to dismiss a juror based on the jury sending out a note saying that an unnamed juror knew both families, because: (1) the note sent by the jury did not allege any misconduct; and (2) the parties already knew that one of the jurors knew the families of defendant and one of the victims.

Judge STEELMAN concurring in a separate opinion.

STATE v. BALLARD

[180 N.C. App. 637 (2006)]

Appeal by defendant from judgments entered 23 August 2004 by Judge James Floyd Ammons, Jr., in the Superior Court in Cumberland County. Heard in the Court of Appeals 15 August 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Tiare B. Smiley, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant-appellant.*

HUDSON, Judge.

Following a capital trial at the 19 July 2004 criminal session of the superior court in Cumberland County, the jury convicted defendant Joshua Ballard of two counts of first-degree murder and robbery with a deadly weapon, and one count of conspiracy to commit robbery with a deadly weapon. Following the jury's recommendation, the court sentenced defendant to consecutive sentences of life in prison without parole on the two murder charges, and additional consecutive sentences of 64-86 months in prison for the robbery and 25-38 months for conspiracy. Defendant appeals. We conclude that defendant is entitled to a new trial.

These charges stem from the 7 August 2001 shooting deaths of Eric Carpenter and his girlfriend, Kelsea Helton, in their Fayetteville apartment. Defendant and James Kelliher were present at the time of the shootings; the issue at trial was whether they conspired to rob and kill the victims, or whether Kelliher robbed and shot the victims without warning or knowledge by defendant during a drug deal.

The evidence tended to show the following: Carpenter dealt drugs from his apartment. Kelliher and defendant's former girlfriend, Lisa Boliaris, testified for the State. At the time of these events, Kelliher was a seventeen-year-old drug addict who had committed several robberies, including stealing the gun used to kill Carpenter and Helton. During the summer of 2001, Kelliher and defendant used drugs and alcohol together. Kelliher testified that defendant called him on 5 August and suggested they rob Carpenter and kill him to prevent identification. Kelliher agreed and offered to provide a gun, and the two discussed the plan over the next few days. Kelliher also asked Jerome Branch to participate.

On 7 August, defendant, Kelliher and Branch met at 8 p.m. and defendant called Carpenter to meet him and Helton at a restaurant. Kelliher gave the gun to defendant who tucked it in his waistband.

Defendant, Kelliher and Branch followed Carpenter and Helton back to their apartment; Branch remained outside in the truck. Once inside the apartment, defendant pulled out the gun and ordered Carpenter to give him drugs. Defendant then took Carpenter and Helton into the kitchen and forced them to their knees before shooting each in the head.

Defendant and Kelliher fled the apartment and drove to Kelliher's neighborhood, where they divided the drugs among themselves and Branch. Kelliher wiped the gun and threw away the shells, and then returned it to defendant with orders to get rid of it.

Lisa Boliaris testified that, on the night of 7 August 2001, Kelliher told her he had shot and killed three people. Kelliher then asked her to be his alibi. Police arrested Kelliher on 9 August, and he later pled guilty to two counts of first-degree murder and robbery with a deadly weapon, and one count of conspiracy to commit robbery with a deadly weapon in exchange for avoiding a capital trial.

Boliaris, defendant's fourteen-year-old girlfriend at the time of the crimes, testified that defendant spoke of planning to rob Carpenter. On the night of 7 August, defendant called Boliaris to meet him. Defendant told her that he and Kelliher had robbed Carpenter and that he had shot Carpenter and Kelliher had shot Helton. Defendant asked Boliaris to be his alibi. The next day, Boliaris went to a local law firm and made a statement that defendant had told her he witnessed two people being killed. On 9 August, the police interviewed Boliaris who gave them a statement which was inconsistent with her original statement in some details.

Defendant testified that he went to Carpenter's apartment only for a drug deal, and that Kelliher's robbery and murder of the victims was unexpected. He stated that he did not even know Kelliher had a gun with him that night.

**[1]** Defendant first argues that the trial court erred in denying defense counsel's motion to withdraw. We agree.

"The right to counsel guaranteed by the Sixth Amendment of the United States Constitution is a fundamental right." *State v. James*, 111 N.C. App. 785, 789, 433 S.E.2d 755, 757 (1993). "The right to effective assistance of counsel includes the right to representation that is free from conflicts of interest." *State v. Bruton*, 344 N.C. 381, 391, 474 S.E.2d 336, 343 (1996) (internal quotation marks omitted). "Whether an impermissible conflict of interest or ineffective assistance of coun-

sel is present must be determined from an *ad hoc* analysis, reviewing the circumstances as a whole." *State v. Hardison*, 126 N.C. App. 52, 55, 483 S.E.2d 459, 461 (1997). In *James*, this Court set forth the rule in cases where an attorney represents both a defendant and a potential witness:

> [I]n a situation of this sort, the practice should be that the trial judge inquire into an attorney's multiple representation once made aware of this fact. If the possibility of conflict is raised before the conclusion of trial, the trial court must take control of the situation. A hearing should be conducted to determine whether there exists such a conflict of interest that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment.

111 N.C. App. at 791, 433 S.E.2d at 758 (internal citations and quotation marks omitted). "[T]he trial judge should see that the defendant is fully advised of the facts underlying the potential conflict and is given the opportunity to express his or her views." *Id.* at 791, 433 S.E.2d at 759 (quoting *United States v. Alberti*, 470 F.2d 878, 882 (2d Cir. 1972), *cert. denied, Alberti v. United States*, 411 U.S. 919, 36 L. Ed. 2d 311 (1973)) (internal quotation marks omitted). In addition, a defendant can waive his right to conflict-free representation only "if done knowingly, intelligently and voluntarily." *Id.* at 791-92, 433 S.E.2d at 759.

Here, defendant contends that he was denied effective assistance of counsel due to his trial counsel's on-going representation of James Ellis Turner, III, on federal criminal charges. On 5 August 2004, following the close of the State's evidence, the prosecutor told the court and defense counsel that he had learned that Turner had revealed potentially exculpatory information during an interview with officers on other matters. Turner had stated that he knew who had killed people at the apartment, suggesting it was Kelliher. Defense counsel asked to talk to the State Bar for an ethics opinion and the court adjourned.

The next day, the defense returned to court, having failed to reach counsel for the State Bar but having spoken to Turner. Defense counsel stated they believed Turner had "credible, material, exculpatory information," but that Turner's testimony could implicate him in unrelated criminal offenses. Thus, defense counsel could not call Turner as a witness for defendant, creating a clear conflict of interest. They

moved to be allowed to withdraw from the case and for a mistrial. Defendant stated that he did not want his counsel to withdraw and did not want a mistrial, but did want Turner to testify. He also told the court "I understand there's a conflict on legal matters that I really don't understand." The court continued the case to 9 August.

On 9 August, defense counsel again sought to withdraw and moved for a mistrial, stating clearly that they would not call Turner to testify. The court questioned defendant again, but defendant again stated that he did not want new counsel or a mistrial, but still wanted Turner to testify. After defense counsel stated that they would not call Turner, the court stated: "The Court hasn't prohibited you from calling this witness." The court then appointed an attorney to advise Turner about testifying. After speaking with Turner several times, the attorney reported that Turner had not decided whether to testify, but didn't want to incriminate himself and wanted the advice of his retained counsel (defendant's trial counsel). Following further discussion, the court stated: "Now, I think you [defense counsel] can call this witness and that he can testify—obviously, I've got no control over what you may or may not ask or what the State may or may not ask if you want to."

Later on 9 August, after further discussion, defense counsel requested a recess "to be sure that Mr. Ballard understands the Court's last questions." The trial court stated that defense counsel was refusing to call Turner ". . . . although the court has in no way prohibited you from calling him . . . ." The court asked defendant again whether he wanted new counsel or a mistrial, and after defendant declined both, the court denied counsel's motions a final time. The trial then proceeded and neither side called Turner to testify. Given the court's repeated statements that it had not prohibited defense counsel from calling Turner and believed that they could in fact call Turner, and the court's failure to make clear to defendant that if he kept his trial counsel, Turner would *not* be called to testify, it is apparent that defendant could have reasonably believed that he might keep his trial counsel without losing the right to Turner's testimony.

When the conflict first arose, defendant stated that he did not understand the legal technicalities involved. Although the matter was continued several times and court gave defendant the opportunity to express his views, we conclude that the court never "fully advised [defendant] of the facts underlying the potential conflict" nor did the court "take control of the situation" as required by *James, supra*. The

record reflects that the trial court never fully explained the conflict or its consequences to defendant, as evidenced by defendant's continuing statements that he wanted both to keep his counsel and have Turner testify, a situation made impossible by the conflict. The State suggests that defendant's waiver was knowing, intelligent and voluntary because defense counsel had repeatedly told the court that they could not and would not call Turner as a witness in defendant's presence, and that defendant's parents may have talked to him about the conflict. However, as stated by the Court in *James*, it is *the trial court*, not the conflicted defense counsel or the defendant's parents which must "see that the defendant is fully advised of the facts underlying the potential conflict and is given the opportunity to express his or her views." 111 N.C. App. at 791, 433 S.E.2d at 758. Because the court failed to properly question and advise defendant on these matters, we cannot conclude that defendant waived his right to conflict-free representation knowingly, intelligently and voluntarily. Defendant is entitled to a new trial.

**[2]** Defendant next argues that the court denied him a fair trial by expressing an opinion about the credibility of a witness and coercing the witness to testify. We do not agree.

Generally,

[t]he presiding judge is given large discretionary power as to the conduct of a trial. Generally, in the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice in the court, are within his discretion. Thus a trial judge may, if the necessity exists because of some statement or action of the witness, excuse the jurors and, *in a judicious manner*, caution the witness to testify truthfully, pointing out to him generally the consequences of perjury.

*State v. Rhodes*, 290 N.C. 16, 23, 224 S.E.2d 631, 635-36 (1976) (emphasis in original) (internal citations omitted). "[T]he reviewing court should examine the circumstances under which a perjury or other similar admonition was made to a witness, the tenor of the warning given, and its likely effect on the witness's intended testimony." *State v. Melvin*, 326 N.C. 173, 187, 388 S.E.2d 72, 79 (1990). "[A] warning to a witness made judiciously under circumstances that reasonably indicate a need for it and which has the effect of merely preventing testimony that otherwise would likely have been perjured does not violate a defendant's right to due process." *Id.*

*Rhodes* sets out four hazards which may result from judicial warnings and admonitions to a witness. First, the trial judge may invade the province of the jury by assessing the witness's credibility. Second, a witness may change the testimony due to a judge's threat of prosecution for perjury. Third, defendant's attorney may be intimidated or discouraged from eliciting essential testimony from the witness. Fourth, a judge's comments may reveal a violation of defendant's due process right to trial before an impartial judge.

*State v. Barnes*, 91 N.C. App. 484, 489-90, 372 S.E.2d 352, 355 (1988), *cert. denied*, 324 N.C. 113, 377 S.E.2d 236 (1989) (internal citations omitted).

Pretrial, Boliaris, still a teenager, and her mother told the district attorney Boliaris was sick, could not remember anything, and would not testify. Boliaris and her mother then appeared before the court, which explained the consequences of failing to obey the subpoenas issued for Boliaris' appearance at trial. At a pretrial hearing on Boliaris' competency to testify, she cried and asked to go home, stating that she had anxiety and panic disorders and was not taking her prescription medications. The court questioned Boliaris' mother about her medications and age, and on being told that Boliaris was seventeen and refused to take her anxiety and depression medications, the court admonished her as follows:

Well, I suggest that you tell her she needs to take her medication because she's coming back in the morning and we're going to try this again. And if we're not able to get some answers out of her, then she's going to come back tomorrow afternoon and we're going to try it again. If we're still not able to get some answers out of her, we're going to come back the next day and we're going to keep coming back and coming back until she is able to testify in a coherent manner or until I'm convinced that she won't ever do it. That's going to take awhile for you to convince me of that.

\*\*\*

I suggest you take her home. Have her take her medicine. Have her have something to eat, something to drink. Get a good night sleep and be back here at 9:30 in the morning, and I mean back here. I don't mean back at [counsels' office]. I mean back here in this courtroom. Now, if you think there is any problem with that at all, I'll be glad to find a place for her to stay tonight.

STATE v. BALLARD

[180 N.C. App. 637 (2006)]

Defense counsel objected to the court's "judicial coercion," which motion the court denied, remarking

> It's obvious to me that this lady is upset. That being here upsets her and that talking to any of you fellows upsets her. It's obvious to me every time she talked to somebody, she says something different. Now, I'm not sure whether I believe at this point whether she has lost her memory or whether she is feigning this in order not to testify. That's why I'm going to have her come back again.

The next day, defense counsel withdrew the motion *in limine* for determination of Boliaris' competency and no further proceedings were held on the matter.

At trial, defense counsel renewed its objection to Boliaris' testimony due to judicial coercion, and the court allowed counsel to voir dire the witness. Boliaris testified that she had been trying not to remember in order to avoid testifying, but that having eaten and rested, she was ready to testify to the best of her ability. She explained that she had signed a statement pretrial saying she couldn't recall anything because defense counsel told her that if she did so she would probably not have to testify. The court ruled that Boliaris could testify.

None of the hazards listed in *Rhodes* are present here. The court did not invade the jury's province by assessing the witness's credibility, nor was there a threat of prosecution for perjury that could influence Boliaris' testimony. Finally, the court's admonition did not violate defendant's due process right to trial before an impartial jury. The court used appropriate discretion to encourage a reluctant and anxious teenage witness to eat, rest and take her medications to enable her to testify truthfully and avoid perjury. This assignment of error is without merit.

[3] Defendant also argues that the court erred in failing to investigate the possibility of juror misconduct and in denying his motion to dismiss a juror. We do not agree.

We review this issue for abuse of discretion:

> Ordinarily, motions for a new trial based on misconduct affecting the jury are addressed to the discretion of the trial court, and unless its rulings thereon are clearly erroneous or amount to a manifest abuse of discretion, they will not be disturbed. The circumstances must be such as not merely to put suspicion on the

verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge.

*State v. Johnson*, 295 N.C. 227, 234-35, 244 S.E.2d 391, 396 (1978) (internal citations and quotation marks omitted). "The determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal." *State v. Bonney*, 329 N.C. 61, 83, 405 S.E.2d 145, 158 (1991). "An inquiry into possible misconduct is generally required only where there are reports indicating that some prejudicial conduct has taken place." *State v. Barnes*, 345 N.C. 184, 226, 481 S.E.2d 44, 67, *cert. denied*, 522 U.S. 876, 118 S. Ct. 196, 139 L. Ed. 2d 134 (1997), and *cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998).

Here, an hour after deliberations began, the jury sent out a note saying that an unnamed juror "knows both families. Can we switch her for one of the alternates?" The court denied this request. One of the jurors had previously disclosed during voir dire that she was acquainted with both the defendant's family and one of the victim's families; however, because the note did not name a juror, we cannot assume this juror was the subject of the jury's note. The court, in its discretion, chose not to conduct an investigation. Given that the note sent by the jury did not allege any misconduct, and the parties already knew that one of the jurors knew the families of defendant and one of the victims, we see no abuse of discretion. We overrule this assignment of error.

New trial.

Judge McCULLOUGH concurs.

Judge STEELMAN concurs in a separate opinion.

STEELMAN, Judge concurring in a separate opinion.

I concur with the first part of the majority opinion awarding defendant a new trial. However, as to the two other issues addressed in the majority opinion, the granting of a new trial renders it unnecessary to deal with those issues. Neither issue is likely to recur upon the retrial of this case.