An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-1037

NORTH CAROLINA COURT OF APPEALS

Filed: 3 March 2015

STATE OF NORTH CAROLINA

    v.

MARY LAKYN WILMOTH

Forsyth County
No. 12 CRS 61644


Appeal by defendant from judgment entered 20 December 2013 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 4 February 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Christina S. Hayes, for the State.*
>
> *Richard Croutharmel for defendant.*


INMAN, Judge.

Defendant Mary Wilmoth appeals the judgment entered after a jury found her guilty of resisting arrest and disorderly conduct. On appeal, defendant contends that she received ineffective assistance of counsel due to her counsel's conflict of interest.

After careful review, because defendant knowingly, intelligently, and voluntarily waived her right to conflict-free counsel, we find no error.

**Factual and Procedural Background**

On 12 April 2013, defendant and Jennifer Paz ("Paz") were arrested and charged with resisting arrest and disorderly conduct. Defendant signed a waiver of counsel and was found guilty in District Court on 12 April 2013. Defendant appealed for a trial *de novo* in Superior Court. At arraignment, defendant was granted court-appointed counsel, and her case was assigned to Assistant Public Defender James McMinn ("McMinn"). Paz's case was also assigned to McMinn. On 12 July 2013, the State filed a motion for joinder. On 25 July 2013, based on its decision to offer a plea bargain only to defendant, the State also filed a motion to disqualify McMinn.

On 29 July 2013, the State's motions came on for hearing before Judge Gary Gavenus in Forsyth County Superior Court. With respect to its motion to disqualify McMinn, the State contended that the North Carolina Rules of Professional Conduct prohibited McMinn from representing both Paz and defendant due to an unwaiveable conflict of interest. McMinn argued that "[t]here [was] nothing about this case that one of these defendants could testify in a way that incriminates the other" and that neither codefendant intended to plead guilty. Thus, he did not believe

that there was any conflict of interest. Judge Gavenus asked

defendant and Paz the following questions:

> THE COURT: Ms. Paz and Ms. Wilmoth, do you understand that you are entitled to have the independent judgment of an attorney who is free of all possible conflicts of interest in representing you in your cases?
>
> . . .
>
> THE COURT: Do you understand that because your attorney is jointly representing you that your attorney may be prevented from opening possible plea agreements or plea negotiations on your behalf and from a possible agreement for one or the other of you to testify for the prosecution in exchange for either a lesser charge or a recommendation of leniency or even a dismissal? . . .
>
> . . .
>
> THE COURT: Do you understand that you and the co-defendant could possibly occupy opposing positions in a trial? . . .
>
> . . .
>
> THE COURT: Do you understand that your attorney's joint representation may cause, in the event that there's a jury trial, the jury to link you two together in this matter?
>
> . . .
>
> THE COURT: Now, do each of you understand that if one or the other of you chooses to testify in your defense, that actually counsel would be unable to cross-examine?
>
> . . .

THE COURT: [] You have the right to have an attorney cross-examine witnesses against you. That is one of the fundamental rights to a jury trial. . . .

. . .

THE COURT: Do you understand that because of this potential conflict that your attorney -- your joint attorney may fail or refrain from cross-examining a State's witness, whether it be one or the other of you or any other State's witness, about matters helpful to you but harmful to the other and that your attorney may fail to object to the admission of evidence that might otherwise be inadmissible to one of you but helpful to the other and that your attorney may fail or refrain from objecting to evidence harmful to you but helpful to the other of you? . . .

. . .

THE COURT: Do you understand that your attorney may be prohibited from attempting to shift the blame from one of you to the other of you because he represents both of you? . . .

. . .

THE COURT: And do you understand that if you are convicted, the same attorney represented you at a sentencing hearing—well, strike that. Do you understand that if one of you pleads guilty and thereafter reveals to the State information damaging to the other of you, that that could result in a conflict with your counsel? Do you understand that?

. . .

THE COURT: I cannot give you all of the possible conflicts of interest that may arise

throughout this joint representation and the joint trial of your case but you understand that there may be other conflicts of interest that arise in the trial? . . .

Defendant and Paz answered that they understood Judge Gavenus's questions.  Judge Gavenus went on to ask defendant:

THE COURT: And Ms. Wilmoth, how old are you?

[DEFENDANT]: 20.

THE COURT: What grade of school did you complete?

[DEFENDANT]: I'm still in college actually.

THE COURT: All right. What year of college are you in?

[DEFENDANT]: I'm in my second year of college. Forsyth Tech.

THE COURT: All right. Now, with all of in this mind, do you have any questions about any of the things that I have said to you?

[DEFENDANT]: No, Your Honor.

. . .

THE COURT: Ms. Wilmoth, do you of your own free will, fully understanding what you are doing, voluntarily waive your right to be represented by an attorney who is unhindered by a possible conflict of interest?

[DEFENDANT]: Yes, Your Honor, I do.

. . .

THE COURT: Ms. Wilmoth, with all this in mind, are you now satisfied to have attorney Mr.

> McMinn represent you and also represent Ms.
> Paz –
>
> [DEFENDANT]: Yes, Your Honor.
>
> THE COURT: -- in this case?
>
> [DEFENDANT]: Yes.

Based on this inquiry, the trial court held:

> All right. Then let the record reflect that I
> have had this conversation with the defendants
> in open court with their attorney present,
> clearly advising them about numerous conflicts
> of interest that could arise both in the plea
> negotiations stage as well as the trial stage;
> that each of them have indicated that they
> freely, voluntarily and understandingly waive
> any conflict in this regard and they both
> consent to Mr. McMinn representing both of
> them in this matter.

The matter came on for trial before Judge Ronald Spivey in Forsyth County Superior Court on 18 and 19 December 2013. Judge Spivey stated that he had "some questions about the representation issue" that he wanted to discuss prior to trial. The State indicated that it was prepared to offer defendant a deferred prosecution plea arrangement based on her clean criminal record, but it would not offer the same arrangement to Paz. After the State renewed its motion to disqualify McMinn, McMinn argued that since defendant and Paz had already waived any conflict before Judge Gavenus, he was prepared to proceed to trial representing both defendant and Paz. Based on the unpublished case of *State v.*

*Reese*, 2007 WL 4233684 (No. COA06-1098), Judge Spivey indicated that he was inclined to allow the motion to disqualify as to either Paz or defendant because there was "at least . . . the potential of a conflict." Judge Spivey went on to ask McMinn whether he had "gained any confidential information" that would prevent him from representing either of the clients going forward. McMinn replied that he had not. Judge Spivey allowed McMinn an opportunity to consult with Paz and defendant to determine "whether he should go forward representing one of [them] or whether he gained information that would make it impossible for him to represent one."

McMinn consulted with defendant and Paz and then expressed his concern to Judge Spivey that, since neither one had had a chance to speak to outside, independent counsel, he did not think he could represent either of them going forward. McMinn also told Judge Spivey that Paz wanted to waive her right to counsel and remand to District Court and that defendant wanted to take the plea of deferred prosecution. Judge Spivey stated that the case was now in a "different posture" and that "one could go forward [with representation] in theory." After reiterating the fact that he had not received any confidential communications from defendant or Paz, McMinn stated that he would continue to represent defendant and that Paz would waive her right to counsel on remand. Judge

Spivey asked Paz, in open court and in the presence of both McMinn and defendant, whether McMinn had gained any confidential information from her that could be used against her at a later time. Paz replied "no," and she waived her right to counsel before agreeing to withdraw her appeal and accept the judgment entered against her in District Court.

After reading the deferred prosecution agreement, defendant rejected the plea arrangement and indicated her desire to proceed to trial. Judge Spivey posed additional questions to defendant regarding McMinn's continued representation:

> [THE COURT:] Do you now wish to go forward with Mr. McMinn's representing your interest in this case?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you feel like you made this decision freely and voluntarily?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And I'll go back and ask then, even though he doesn't represent both of you now, you understand that you're entitled to have independent counsel talk to you as free of any possible conflict of interest?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you feel like that Mr. McMinn has gained any information from you that's confidential in nature that could be used against you in order to benefit the co-defendant?

THE DEFENDANT: No.

THE COURT: Do you feel like that he has gained anything during his representation that's adversely affected your position in this case as of this moment?

THE DEFENDANT: No.

THE COURT: So at this stage, do you freely and voluntarily wish to go forward with him representing your interest in this case?

THE DEFENDANT: Yes, Your Honor.

Following the colloquy, Judge Spivey concluded as follows:

THE COURT: All right. Thank you, ma'am. The Court will find that Ms. Wilmouth is the sole remaining defendant in this case, has freely and voluntarily elected to proceed with her current counsel and feels that there has been no adverse impact or confidential information used against her. And, of course, the co-defendant has waived any such conflict should any exist.

The matter proceeded to trial with McMinn representing defendant.

At trial, several witnesses testified that they called 911 after they saw defendant and Paz fighting in the center lane of Stratford Road in Clemmons. Detective Edness M. Gaylor, III ("Detective Gaylor") and Detective Mark March ("Detective March") with the Forsyth County Sheriff's Office responded to the calls. When they arrived, Detective Gaylor testified that defendant and Paz were walking down the center turn lane. According to Detective

Gaylor, defendant was extremely hostile toward them. When defendant began walking away, Detective March told her to stop and reached out for her elbow. Defendant told Detective Gaylor to "get the f--- off" of her and continued to walk away. Detective March grabbed her backpack to detain her, and a struggle ensued.

At trial, defendant testified in her own defense and denied pushing Paz into the lanes of travel and fighting with Paz. Instead, defendant claimed that she and Paz were jogging together when Paz began to slow down. In an effort to motivate her, defendant began pushing her and yelling at her. Defendant also testified that she fully cooperated with the police until they put their hands on her. Furthermore, defendant alleged that, during the encounter, Detective March called her a "stupid b----," grabbed her by the back of her hair, and shoved her to the ground.

When defendant began to testify as to what Paz said to the police, the trial court sustained the State's hearsay objection, and McMinn informed the court that he would not be calling Paz as a witness.

On 20 December 2013, the jury found defendant guilty of resisting, obstructing, or delaying a public officer and disorderly conduct. Judge Spivey sentenced her to 30 days

imprisonment but suspended her sentence and placed her on 18 months of supervised probation. Defendant appeals.

**Analysis**

Our Supreme Court has held:

> A defendant in a criminal case has a constitutional right to effective assistance of counsel. The right to effective assistance of counsel includes the right to representation that is free from conflicts of interest. In order to establish a violation of this right, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Permitting a single attorney to represent two or more codefendants in the same trial is not a *per se* violation of the right to effective assistance of counsel.

*State v. Bruton*, 344 N.C. 381, 391, 474 S.E.2d 336, 343 (1996) (internal quotation marks and citations omitted). Generally, a defendant raising a claim of ineffective assistance of counsel must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. *State v. Choudhry*, 365 N.C. 215, 219, 717 S.E.2d 348, 352 (2011) (*citing Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 692, 693 (1984)). However, here, defendant asserts her ineffective assistance claim based on her attorney's actual conflict of interest arising out of his representation of both defendant and Paz. *See generally State v. James*, 111 N.C. App. 785, 789, 433

S.E.2d 755, 757 (1993) (distinguishing between ineffective assistance of counsel claims under *Strickland* and questions of conflict of interest); *see also Cuyler v. Sullivan*, 446 U.S. 335, 343, 64 L. Ed. 2d 333, 343 (1980) (synopsis of the distinction).

This Court has noted that "when the claim of ineffective assistance is based upon an actual, as opposed to a potential, conflict of interest arising out of an attorney's multiple representation, a defendant may not be required to demonstrate prejudice under *Strickland* to obtain relief." *Choudhry*, 365 N.C. at 219, 717 S.E.2d at 352. "The exact standard to be applied when evaluating what relief, if any, should be granted in response to a conflict of interest claim hinges, to a considerable extent, upon the exact procedural context in which the conflict of interest claim has been presented for a reviewing court's consideration." *State v. Gray*, __ N.C. App. __, __, 736 S.E.2d 837, 841, *disc. review denied*, __ N.C. __, 747 S.E.2d 534 (2013). When a defendant does not object to joint representation where an actual conflict exists, reversal is not automatic but a defendant must show that "an actual conflict of interest adversely affected his lawyer's performance." *Choudhry*, 365 N.C. at 220, 717 S.E.2d at 352.

A criminal defendant's "Sixth Amendment right to conflict-free representation can be waived by a defendant, if done

knowingly, intelligently and voluntarily." *James*, 111 N.C. App. at 791-92, 433 S.E.2d at 759. In order for a waiver to be effective, the trial court must ensure that "the defendant is fully advised of the facts underlying the potential conflict and is given the opportunity to express his or her views." *State v. Ballard*, 180 N.C. App. 637, 643, 638 S.E.2d 474, 479 (2006). In determining whether a defendant has knowingly, intelligently, and voluntarily waived his right to conflict-free counsel, the Fourth Circuit has held that:

> [t]he court must personally address each defendant and inform him of the potential hazards of representation by a single attorney, as well as his right to separate representation. In turn, the defendants are free to ask the court questions about the nature and consequences of the representation:
>
> Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the possible perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

*United States v. Swartz*, 975 F.2d 1042, 1049 (4th Cir. 1992) (*quoting* Fed. R. Crim. P. 44(c)).

Defendant's claim that she received ineffective assistance of counsel due to McMinn's conflict arises from two separate periods of McMinn's representation. First, defendant claims that McMinn's pretrial representation of both defendant and Paz constituted ineffective assistance of counsel because McMinn was unable to adequately advise defendant whether to take the plea offer of deferred prosecution.[1]  Second, defendant alleges that McMinn's continued representation of defendant after Paz waived her right to counsel and withdrew her appeal to Superior Court was constitutionally ineffective because McMinn refused to call Paz as a witness to testify on defendant's behalf.  However, both Judge Gavenus and Judge Spivey, reviewing the procedural context of the matter with defendant, conducted an inquiry in which defendant waived her right to conflict-free representation.  Thus, the issue is whether defendant's waivers were knowing, intelligent, and voluntary.  *James*, 111 N.C. App. at 791-92, 433 S.E.2d at 759.

With regard to defendant's 29 July 2013 pretrial waiver, we are satisfied that Judge Gavenus fully explained the potential

---

[1]Although defendant claims on appeal that the State's pretrial plea offer to defendant included an agreement that she testify against Paz, we are unable to substantiate this from the record.  In contrast, the State attorney's representations to the trial court indicated that the offer of deferred prosecution was based solely on defendant's clean criminal record.

consequences that could arise as a result of McMinn's joint representation of defendant and Paz. Specifically, Judge Gavenus explained the type of representation defendant was entitled to receive under the Sixth Amendment and the effect any conflict may have on plea negotiations, examination of witnesses—including Paz, and sentencing issues. Furthermore, Judge Gavenus inquired as to defendant's educational status and gave her a chance to express her opinions and ask questions. Because the trial court fully advised defendant of the facts underlying the potential conflict and gave her the opportunity to express her views, we believe that defendant's 29 July waiver was knowing, intelligent, and voluntary.[2] *See generally Ballard*, 180 N.C. App. at 643, 638 S.E.2d at 479 (holding that when a trial court becomes aware of a potential conflict of interest, "the trial judge should see that

---

[2] In support of her argument, defendant urges the Court to adopt the rule set forth in this Court's unpublished decision of *State v. Reese*, 2007 WL 4233684 (No. COA06-1098), which has no precedential value. *See* N.C. R. App. P. 30(e) (2013). In *Reese*, *4, this Court held that, to constitute a knowing and intelligent waiver, the defendant must have "had the opportunity to consult with counsel unburdened by dual loyalty prior to giving their consent" and individually consult with his attorney to discuss it. However, in light of the case-specific procedural analysis required by this Court in *Gray*, *supra*, and as evidenced by the fact-intensive analysis in this case, we believe that determining whether a waiver is effective cannot be based solely on bright-line rules of law but, instead, must be based on the facts and circumstances of each case.

the defendant is fully advised of the facts underlying the potential conflict and is given the opportunity to express his or her views"). Accordingly, defendant waived any potential conflict of interest at the 29 July hearing.

As to defendant's 19 December 2013 waiver consenting to McMinn's continued representation of her after he withdrew from representing Paz and Paz waived her right to counsel, withdrew her appeal, and agreed to accept the District Court's judgment on remand, we are also convinced that defendant's waiver was knowing, intelligent, and voluntary. Prior to Judge Spivey's *voir dire* of defendant, both McMinn and Paz, in open court and in defendant's presence, explicitly denied that Paz had given McMinn any confidential information during the course of the representation that could be used against her. When questioned by Judge Spivey, defendant also stated that McMinn had not gained any confidential information from her that could be used against her. Our Supreme Court has repeatedly noted that defense counsel is in the "best position" to recognize when dual representation constitutes a conflict of interest. *Choudhry*, 365 N.C. at 223, 717 S.E.2d at 354. The *Choudhry* Court went on to say that

> while a trial court may not rely solely on
> representations of counsel to find that a
> defendant understands the nature of a
> conflict, the court reasonably may consider

> the statements of counsel when determining both whether an actual conflict exists and, if so, whether the defendant is knowingly, intelligently, and voluntarily waiving his or her rights to conflict-free representation.

*Id.* Here, not only did McMinn deny that there was any conflict of interest, but he also repeatedly stated that he had not received any confidential communications from either Paz or defendant. Consequently, there was no need for Judge Spivey to advise defendant about all the possible limitations of that prior representation.

In *James*, 111 N.C. App. at 790, 433 S.E.2d at 758, this Court examined a potential conflict of interest that arose when the same attorney represented the defendant and a prosecution witness in unrelated matters. The Court noted "several avenues of possible conflict" including:

> Confidential communications from either or both of a revealing nature which might otherwise prove to be quite helpful in the preparation of a case might be suppressed. Extensive cross-examination, particularly of an impeaching nature, may be held in check. Duties of loyalty and care might be compromised if the attorney tries to perform a balancing act between two adverse interests.

*Id.* However, unlike in *James*, the undisputed record in the present case shows that McMinn did not gain any confidential information that could be used against Paz or against defendant, whether for

examination or impeachment purposes, or that would affect his representation of defendant at trial. Further, the procedural posture after Paz withdrew her appeal and accepted the District Court's judgment assured that McMinn's representation of defendant could not possibly affect Paz's case. McMinn had no reason to "perform a balancing act," *see id*., because Paz and defendant had already consented to any potential conflict of interest at the 29 July hearing and released McMinn from his duty of loyalty to them individually. As explained in more detail *infra*, there is no basis for defendant's contention that McMinn's trial preparation and strategy was adversely influenced by his former representation of Paz.

Even assuming *arguendo* that defendant's 19 December 2013 waiver was ineffective, she has failed to show that "an actual conflict of interest adversely affected [her] lawyer's performance," *Choudhry*, 365 N.C. at 220, 717 S.E.2d at 352. Defendant contends that McMinn's failure to call Paz as a witness evidences not only that an actual conflict existed but also that this conflict adversely affected McMinn's representation because she was "prejudiced by her inability to show the jury that Paz's testimony would corroborate her own." We disagree with defendant's contention that the only reasonable explanation for why McMinn

failed to call Paz as a witness was based on information he obtained as a result of his prior representation. Again, McMinn, Paz, and defendant all denied that McMinn was privy to confidential communications. Moreover, our review of the record leads us to the conclusion that Paz's testimony would not have been especially helpful to defendant's case nor would it have substantially discredited the testimony of Detectives March and Gaylor. Given that Paz had a criminal record and had been convicted based on the same incident underlying the charges against defendant, it is also reasonable to believe that McMinn knew that her credibility would be an issue and, therefore, chose not to call her. Thus, we cannot say that McMinn's refusal to call Paz as a witness for the defense constituted an ineffective trial strategy or had an adverse effect on defendant.

In *Choudhry*, the issue of whether an attorney's multiple representation constituted a conflict of interest was based on the attorney's representation of the defendant and his prior representation of Michelle Wahome, a State's witness and the defendant's former girlfriend ("Wahome"). *Id.* at 219, 717 S.E.2d at 352. At the defendant's trial, defense counsel refrained from cross-examining Wahome about her past criminal charges. *Id.* at 226, 717 S.E.2d at 356. On appeal, the defendant contended that

the suppressed examination evidenced the adverse effect of the prior representation on his counsel's performance and, in the alternative, that the prior representation prejudiced the defendant. *Id*. However, our Supreme Court disagreed, noting that

> While cross-examination of Wahome about her 2003 charges could have further undermined her credibility, it equally well could have opened the door for redirect examination by the State relating to any role defendant may have played. Thus, objectively sound strategic reasons unrelated to the former representation appear to have existed for defense counsel to avoid asking Wahome about her charges. . . . We see no indication of the adverse effect on defense counsel's performance required to win an automatic reversal under the *Sullivan* line of cases. In addition, we fail to find any prejudice accrued to defendant as a result of defense counsel's prior representation of Wahome.

*Id*. Here, we believe that "sound strategic reasons," *id*., unrelated to McMinn's former representation of Paz, existed to support McMinn's decision to not call Paz as a witness. Thus, as in *Choudhry*, even if we were to find that defendant's trial waiver of conflict-free counsel was ineffective, defendant still would be unable to show that McMinn's former representation of Paz had an adverse effect on his performance at trial.

In sum, based on the thorough *voir dire* with defendant in which Judge Gavenus advised her about the potential consequences of joint representation and gave her the chance to ask questions,

defendant's 29 July 2013 waiver was knowing, intelligent, and voluntary. Furthermore, Judge Spivey's inquiry of McMinn, Paz, and defendant on 19 December 2013, in totality, was sufficient to ensure that defendant's waiver of conflict-free representation was knowing, intelligent, and voluntary. Because McMinn had not gained any confidential communications that could adversely affect defendant or Paz and because McMinn owed no duty of loyalty to Paz, defendant is unable to establish that she was denied effective assistance of counsel at trial due to a conflict of interest. Finally, even assuming *arguendo* that defendant's waiver of conflict regarding McMinn's continued representation of her at trial was ineffective, defendant is unable to meet the burden set out in *Choudhry*, 365 N.C. at 219, 717 S.E.2d at 352, of showing that an actual conflict of interest adversely affected McMinn's representation of her.

## Conclusion

Based on the foregoing reasons, we conclude that defendant knowingly, intelligently, and voluntarily waived her right to conflict-free counsel during the 29 July 2013 pretrial hearing and during trial.

NO ERROR.

Judges STEELMAN and DIETZ concur.

Report per Rule 30(e).